**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SPIN MASTER LTD., A Canadian Corporation, AND SPIN MASTER TOYS UK LIMITED, A United Kingdom Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX_ZENG, <br><br> Defendant. | Case No. 24-cv-12565 <br><br> **Hon. Judge Steven C. Seeger** <br><br> **Magistrate Judge Keri L. Holleb Hotaling** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF
DEFAULT AND DEFAULT JUDGMENT**

Plaintiffs, Spin Master Ltd. and Spin Master Toys UK Limited (together, "Plaintiffs" or "Spin Master") submit the following memorandum in support of their Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against Defendant alex_zeng ("Defaulting Defendant"), based on Plaintiffs' action for trademark infringement, counterfeiting, and false designation of origin.

**STATEMENT OF FACTS**

Plaintiffs are the owners of numerous trademarks (collectively, the "RUBIK'S Trademarks"). Amended Complaint [13] at ¶¶ 9, 11-15. Defaulting Defendant is an individual or business entity of unknown makeup who owns and/or operates the e-commerce store operating under the seller alias alex_zeng. *Id.* at ¶¶ 21-22; **Exhibit 1**.[1] Defaulting Defendant targets sales to Illinois residents by setting up and operating an e-commerce store that targets U.S. consumers using at least the Seller Alias, offers shipping to the U.S., including Illinois, accepts payment in

---

[1] Attached as **Exhibit 1** is screenshot evidence for Defaulting Defendant.

U.S. dollars and/or funds from U.S. bank accounts, and on information and belief, has offered for sale and/or sold unauthorized and unlicensed products using infringing and counterfeit versions of the federally registered RUBIK'S Trademarks to residents of Illinois (the "Counterfeit Products"). *Id.* at ¶¶ 2, 25. Additional factual assertions regarding Defaulting Defendant in Paragraphs 21-34 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 21-34.

Plaintiffs filed this action on December 6, 2024 [1] and subsequently filed an Amended Complaint on December 9, 2024. [13]. On April 1, 2025, the Court granted Plaintiff's Motion for Expedited Discovery [14] and Motion for Electronic Service of Process [15]. [22]. The Court permitted Plaintiff to complete service of process to Defaulting Defendant by electronically publishing a link to the Amended Complaint and other relevant documents on a website and by sending an e-mail to the e-mail addresses provided for Defaulting Defendant by third parties that includes a link to said website. *See* [16] at p. 1; [22]. Defaulting Defendant was properly served on April 9, 2025. [27]. Defaulting Defendant has not filed an answer or otherwise pled in this action. See Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiffs now move this Honorable Court for an Order entering default and default judgment, finding Defaulting Defendant liable on all counts of Plaintiffs' Amended Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiffs further seek an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against the Defaulting Defendant for use of counterfeit RUBIK'S Trademarks on products sold through the e-commerce store operating under the Seller Alias. Plaintiffs also seek entry of a permanent injunction prohibiting Defaulting Defendant from selling Counterfeit Products, and an order that all assets in Defaulting Defendant's financial accounts be transferred to Plaintiffs.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendant since it directly targets business activities toward consumers in Illinois and causes harm to Plaintiffs' business within this Judicial District. *See* [13] at ¶¶2, 25, 33-34; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce store operating under the Seller Alias, Defaulting Defendant has targeted sales from Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, has sold Counterfeit Products to residents of Illinois. [13] at ¶¶ 2, 25. Personal jurisdiction exists over Defaulting Defendant since it directly targets its business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive e-commerce store under at least the Seller Alias through which Illinois residents can purchase Counterfeit Products. *Id.*; *see NBA Properties, Inc. v. HANWJH,* 46 F.4th 614, 624-627 (7th Cir. 2022)*; see also Monster Energy Co. v. Wensheng,* 136 F. Supp. 3d 897, 906-08 (N.D. Ill. 2015)*.*

## II.     PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiffs filed their Amended Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), and false designation of origin, 15 U.S.C. § 1125(a) (Count II). [13]. Defaulting Defendant was properly served and has not filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, Defaulting Defendant is not an active-duty member of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiffs ask for entry of default against the Defaulting Defendant.

## III.    PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

The answer deadline has passed and no answer or other responsive pleading has been filed by the Defaulting Defendant. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiffs request an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against the Defaulting Defendant for use of counterfeit RUBIK'S Trademarks on

products sold through the e-commerce store operating under at least the Seller Alias. Plaintiffs also seek entry of a permanent injunction prohibiting Defaulting Defendant from selling Counterfeit Products and an order that all assets in Defaulting Defendant's financial accounts be transferred to Plaintiffs.

### A.      Trademark Infringement, Counterfeiting, and False Designation of Origin

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001).

Plaintiffs alleged in their Amended Complaint that they are the exclusive owners of the RUBIK'S Trademarks and that Defaulting Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products using infringing and counterfeit reproductions of the RUBIK'S Trademarks, that Defaulting Defendant has knowledge of Plaintiffs' rights in the RUBIK'S Trademarks, that Defaulting Defendant is not authorized to use the RUBIK'S Trademarks, and that Defaulting Defendant's use of the RUBIK'S Trademarks causes a likelihood of confusion. [13] at ¶¶ 33-34, 36-38, 43.

Plaintiffs also alleged in their Amended Complaint that Defaulting Defendant is using the RUBIK'S Trademarks in connection with the sale of Counterfeit Products. *Id.* at ¶¶ 43-44. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defaulting Defendant's Counterfeit Products by Plaintiffs. *Id.*

Since the Defaulting Defendant has failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiffs' Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiffs request entry of judgment with respect to Counts I and II for willful trademark infringement and counterfeiting of the RUBIK'S Trademarks and false designation of origin against the Defaulting Defendant.

## IV.   PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendant's sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *9, (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. Apr. 17, 2008).

### B. A Statutory Damages Award Is Warranted

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within

the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The P'ships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

In addition, courts have awarded significant damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, at *15-16 (D.N.J. Jun. 14, 2010) (significant damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, at *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded statutory damages, including up to the maximum provided by law, to the plaintiff to serve the

purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Burberry Limited, et al. v. XIE JI PING, et al.,* No. 18-cv-07442 (N.D. Ill. Jan. 15, 2019) (unpublished) (Docket Nos. 42 and 43) (awarding $1,000,000 in statutory damages per defendant); *NBA Properties, Inc., et al. v. YU ZICHENG, et al.*, 19-cv-04412 (N.D. Ill. Oct. 8, 2019) (unpublished) (Docket Nos. 60 and 61) (awarding $500,000 in statutory damages per defendant); *H-D U.S.A., LLC v. DLLL, et al.,* No. 19-cv-07629 (N.D. Ill. Feb. 18, 2020) (unpublished) (Docket Nos. 64 and 65) (same). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), and the facts specific to this case, Plaintiffs respectfully request the Court's entry of an award of fifty thousand dollars ($50,000) against the Defaulting Defendant.

      i.    <u>Defaulting Defendant's Willful Counterfeiting Supports the Requested Award</u>

Defaulting Defendant's counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, at *19-20 (N.D. Ill. Feb. 25, 2005). Knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. As alleged in Plaintiffs' Amended Complaint, Defaulting Defendant facilitated sales by designing the e-commerce store so that it appeared to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler. [13] at ¶ 26. As such, Defaulting Defendant clearly had knowledge that its activities constituted infringement or at least a reckless disregard for Plaintiffs' rights in the RUBIK'S Trademarks. [13] at ¶¶ 25-34; *see also* **<u>Exhibit 1</u>**. Finally, District Courts have deemed counterfeiting willful when

defendants default. *See Burberry Limited, et al. v. The P'ships, et al,* No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The P'ships, et al.,* No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

      ii.    The Value of the RUBIK'S Trademarks and Plaintiffs' Efforts to Promote, Protect, and Enhance Plaintiffs' Brand Justify the Requested Award

In determining an appropriate statutory damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the brand] and the efforts taken to protect, promote and enhance [that brand]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the RUBIK'S Trademarks. [13] at ¶ 18. Thus, the requested statutory damages award should be given favorable consideration in view of the value of Plaintiffs' brand and the extensive steps being taken by Plaintiffs to protect, promote and enhance it. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The P'ships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

      iii.    Defaulting Defendant's Wide Exposure over the Internet Merits the Requested Award

Defendants who operate online attract wide market exposure through Internet traffic and/or advertisement. Defaulting Defendant's wide market exposure over the Internet warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 in statutory damages, noting "the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store."); *Luxottica USA LLC v. The P'ships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages

"because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

    iv.  <u>The Requested Statutory Damages Award Must Sufficiently Deter Defaulting Defendant and Similar Online Counterfeit Sellers</u>

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers . . . plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005); *see also Luxottica USA LLC v. The P'ships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites. In the 2021 fiscal year alone, U.S. government seizures of goods with intellectual property rights (IPR) violations totaled over $3.3 billion. Gaudio Declaration at ¶ 4. U.S. Customs and Border Protection statistics show that most of the counterfeits originated from Hong Kong and China. *Id.* Additionally, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) titled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs. *Id.* at ¶ 5. The requested statutory damages award is necessary to deter both Defaulting Defendant and other similarly situated online sellers.

V.     **PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF**

In addition to the foregoing relief, Plaintiffs respectfully request entry of a permanent injunction enjoining Defaulting Defendant from infringing or otherwise violating Plaintiffs' rights in the federally registered RUBIK'S Trademarks.  Plaintiffs are also entitled to injunctive relief so they can quickly take action against any new e-commerce stores selling Counterfeit Products that are found to be linked to the Defaulting Defendant.  *See Burberry Limited, et al. v. The P'ships, et al.,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The P'ships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

A.     **Plaintiffs Do Not Have an Adequate Remedy at Law and Will Suffer an Irreparable Injury Should Defaulting Defendant's Actions Not Be Enjoined.**

"[I]t is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *MetroPCS*, 215 F. Supp. 3d at 639 (collecting cases). Further, "[n]o adequate remedy at law exists because absent permanent injunctive relief, [Plaintiff] would be forced to repeatedly file suit any time [Defaulting] Defendants, who have shown complete disregard for their legal obligations and the jurisdiction of this Court, infringe plaintiff's trademark rights in the future." *MetroPCS*, 215 F. Supp. 3d at 639.

Even absent any presumption, the Seventh Circuit has "continued to recognize that 'irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial).'" *Luxottica Group, S.p.A. v. Light In The Box Ltd*., 2016 U.S. Dist. LEXIS 144660, at *15 (N.D. Ill. 2016) (quoting *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013)). Defaulting Defendant's attempt to "piggyback" off Plaintiffs'

11

efforts through the unauthorized use of the RUBIK'S Trademarks has and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' reputation, loss of exclusivity, and loss of future sales. [13] at ¶ 18. The extent of the harm to Plaintiffs' reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defaulting Defendant's infringing activities through injunctive relief. *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1046 (N.D. Ill. 2001).

### B.     The Balancing of Harms Tips in Plaintiffs' Favor and Issuance Is in the Public Interest

As a willful infringer, Defaulting Defendant is entitled to little equitable consideration. There is no harm to the defendant to being enjoined from violating the law, and the public interest is served by eliminating potential consumer confusion. *River Light V, L.P. and Tory Burch LLC v. Zhangyali, et al.,* 2016 U.S. Dist. LEXIS 111301, at *13-14 (N.D. Ill. Aug. 22, 2016). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

If Defaulting Defendant's trademark infringement and counterfeiting continues, Plaintiff will lose potential profits and risk consumers associating Defaulting Defendant's inferior Counterfeit Products with Plaintiff. *See Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 950 (C.D. Ill. 2014). On the other hand, a permanent injunction may only harm Defaulting Defendant's profits if it is forced to stop selling Counterfeit Products, but Defaulting Defendant "never had a legal right to profit from such counterfeiting." *Id*. Additionally, "the monetary benefits that [Defaulting] Defendants receive from their actions are not benefits to be protected from injury." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted).

12

Finally, "the public interest lies in favor of upholding property interests in trademarks and preventing consumer confusion." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted). "[G]ranting an injunction under these circumstances serves the public's interest in not being deceived about the products they are purchasing." *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, 889 (N.D. Ill. 2008). Accordingly, a permanent injunction against Defaulting Defendant is appropriate.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court enter default and default judgment against Defaulting Defendant, award statutory damages in the amount of fifty thousand dollars ($50,000) against the Defaulting Defendant pursuant to 15 U.S.C. § 1117(c), and enter a permanent injunction order prohibiting Defaulting Defendant from selling Counterfeit Products and transferring all assets in Defaulting Defendant's financial accounts to Plaintiffs.

Dated this 9th day of May 2025.      Respectfully submitted,

/s/ Trevor C. Talhami
Amy C. Ziegler
Justin R. Gaudio
Trevor C. Talhami
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ttalhami@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited*